UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

CIVIL ACTION NO. 3:14-CV-00677-JHM

TERESA BLAIR                                                                                                    PLAINTIFF

v.

MAXIM HEALTHCARE                                                                              DEFENDANT
SERVICES, INC.

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Maxim Healthcare Services, Inc.'s (hereinafter "Maxim") motion for summary judgment. [DN 14]. Fully briefed, this matter is ripe for decision. For the reasons stated below, the motion for summary judgment is **GRANTED**.

### I. BACKGROUND

Plaintiff Teresa Blair was employed as a Licensed Practical Nurse (LPN) by Maxim from 2008 until January 16, 2014. Her main assignment was to provide in-home care for one patient, J.C., who suffered from cerebral palsy and mental retardation. J.C. required 24-hour care, with Maxim providing 16 hours of care and J.C.'s mother providing 8 hours of care each day. At least initially, Maxim rated Blair's work as satisfactory while also noting that she "must report all incidence with [patient]/family to office," as soon as possible. [DN 55-8, at 4]. But beginning in 2012 and continuing throughout her time at Maxim, the company logged complaints against Blair related to her interference with the care of J.C. by other Maxim LPNs. [DN 55-9].

On December 30, 2013, Blair found J.C. in bed without his required ventilator or tracheostomy tube attached. His mother was at the home, but she was upstairs away from J.C.

and unresponsive. Blair contacted Jody Ward, Clinical Manager at Maxim, with this news, and Ward advised Blair to have J.C. taken to the hospital once he was stabilized. An investigation was initiated on that day with Adult Protective Services, as J.C. had recently turned eighteen, based on the belief that J.C. was receiving inadequate care in the home. There is conflicting evidence in the record as to whether Blair interfered with the investigation of the assigned social worker, Trudy Trowel, as Maxim's own internal logs state that Blair talked over J.C.'s mother while she was speaking to Trowel [DN 55-9, at 1], but Trowel's declaration states that she has no recollection of this and that Blair was not in the room when Trowel spoke to J.C.'s mother. [DN 59-5, at 2–3]. However, Blair was given a formal written warning based upon this alleged conduct on January 7, 2014. [DN 55-10, at 4].

J.C. was subsequently discharged from the hospital and returned home, where Blair continued to provide care for him. However, on January 16, 2014, Susan Nutter, a supervisor, visited J.C.'s residence while Blair was on duty. There she discovered that a pulse oximeter that was required to be attached to J.C. at all times was not attached and that an ambu-bag that should have been at J.C.'s side was on the top shelf of a closet behind a closed door. [DN 55-11]. That same day, Blair's supervisors, along with the Corporate Human Resources department, made the decision to terminate Blair. Blair was notified the next day, January 17, 2014.

Blair initiated this action in Jefferson Circuit Court on September 5, 2014. Her second amended complaint makes three claims: wrongful termination in violation of KRS 216B.165 and KRS 446.070, wrongful termination in violation of the common law of Kentucky, and unlawful wage withholding under KRS 337.385. [DN 30, 55-1]. Maxim removed to this Court on October 8, 2014 and moved for summary judgment on all three claims. In Blair's response, she noted that Maxim's motion as to the unpaid wages claim was well taken and conceded the claim,

leaving only the two claims for wrongful termination. [DN 59]. After the parties submitted briefs on Maxim's motion for summary judgment, the Court ordered additional briefing on the issue of whether KRS 216B.165 is applicable to this case [DN 65], and the parties submitted their respective briefs on this issue. [DN 67, 68, 69, 71].

## II. STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

3

### III. D<small>ISCUSSION</small>

Blair's two claims both rely on the same statute, KRS 216B.165, for relief. In ruling on Maxim's motion to dismiss earlier in the case, the Court concluded that this statute applied to the facts of this case and supported Blair's claims [DN 21, at 9–10]. The Court expressed doubt at the time and it now believes its earlier conclusion was wrong.

KRS 216B.165 reads, in pertinent part,

> (1) Any agent or employee of a health care facility or service licensed under this chapter who knows or has reasonable cause to believe that the quality of care of a patient, patient safety, or the health care facility's or service's safety is in jeopardy shall make an oral or written report of the problem to the health care facility or service, and may make it to any appropriate private, public, state, or federal agency.
>
> . . .
>
> (3) No health care facility or service licensed under this chapter shall by policy, contract, procedure, or other formal or informal means subject to reprisal, or directly or indirectly use, or threaten to use, any authority or influence, in any manner whatsoever, which tends to discourage, restrain, suppress, dissuade, deter, prevent, interfere with, coerce, or discriminate against any agent or employee who in good faith reports, discloses, divulges, or otherwise brings to the attention of the health care facility or service the circumstances or facts to form the basis of a report under subsections (1) or (2) of this section . . .

This statute requires employees of health care providers to report issues regarding patient care or safety to their employer, and it provides "whistleblower" protection to those employees by preventing employers from taking retaliatory action against those whose raise such concerns. Blair argues that, because this statute requires her to report concerns about patient safety and care, she was engaged in protected activity when she raised her concerns with Ward about the adequacy of care that J.C.'s mother was providing when Maxim employees were not present. The question in this case is whether KRS 216B.165 actually required Blair to report this concern

4

and, more importantly, whether it provided her with protection from retaliation for making such a report.

The Court concludes that Blair was not obligated to report anything under KRS 216B.165 because she had no reason to believe that the quality of care received by J.C. from Maxim was jeopardizing his safety. Her concerns related to the care provided to J.C. by his mother, not the health care provider who employed her. KRS 216B.165 as a whole reflects a legislative desire for health care employees to freely raise concerns about the quality of care their employers are providing without fear of reprisal, with the goal of improving the quality of care that the employer ultimately provides. *See* KRS 216B.010 (stating that the purpose of KRS Chapter 216B includes "improv[ing] the quality and increas[ing] access to health-care facilities, services, and providers . . .").

KRS 216B.165(3) provides whistleblower protection to employees who make reports under subsection (1) of the statute. *See MacGlashan v. ABS Lincs KY, Inc.*, 448 S.W.3d 792, 793 (Ky. 2014) ("KRS 216B.165(3) provides a kind of whistle-blower protection for health facility workers"). As it is most commonly understood, a "whistleblower act" is a "law protecting employees from retaliation for properly disclosing *employer wrongdoing* such as . . . endangering public health or safety." *Black's Law Dictionary* (10th ed. 2014). In this case, Blair reported concerns regarding J.C.'s care as it was being provided by J.C.'s mother, not Maxim. Thus, Blair never "blew the whistle" on Maxim, instead, she "blew the whistle" on J.C.'s mother. Reporting concerns related to the quality of care provided by individuals other than the employee's employer are outside the scope of KRS 216B.165.

Blair's reasonable suspicions concerning J.C.'s care by his mother were properly reported pursuant to KRS 209.030(2) which reads,

5

> Any person, including but not limited to physician, law enforcement officer, nurse, social worker, cabinet personnel, coroner, medical examiner, alternate care facility employee, or caretaker, having reasonable cause to suspect that an adult has suffered abuse, neglect, or exploitation, shall report or cause reports to be made in accordance with the provisions of this chapter . . .

Blair's concerns were brought to the attention of the appropriate state agencies. These state agencies were in a position to address the concerns---Maxim was not.

Interpreting KRS 216B.165 in this fashion gives it meaning and purpose. Otherwise, there is nothing to distinguish it from the general requirement of KRS 209.030(2). *See Shawnee Telecom Resources, Inc. v. Brown*, 354 S.W.3d 542, 551 (Ky. 2011) ("We presume that the General Assembly intended for the statute to be construed as a whole, for all of its parts to have meaning, and for it *to harmonize with related statutes*") (emphasis added).

Blair argues that the two statutes are complementary and work together to establish a scheme where an employee first must express their concern regarding patient care to their employer under KRS 216B.165, and if the situation is not rectified and rises to the level of neglect, then a report must be made to the appropriate state agencies under KRS 209.030. That is obviously true in the situation where the concern relates to the care provided to a patient by the health care facility, but, as noted, that was not the situation here.

Under the facts of this case, KRS 216B.165(1) did not require Blair to report her concerns related to J.C.'s care to Maxim, and more importantly, since the statute does not apply, it provides no support for her wrongful termination claims under either KRS 446.070 or the common law of Kentucky. Therefore, Maxim's motion for summary judgment as to all three of Blair's claims is **GRANTED**.

## IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the motion for summary judgment is **GRANTED**.

cc: counsel of record

                                           **Joseph H. McKinley, Jr., Chief Judge**
                                              **United States District Court**

December 9, 2016